UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SOKHEAN KEO,

Petitioner,

v.

WARDEN OF THE MESA VERDE ICE PROCESSING CENTER, et al,[1]

Respondents.

Case No. 1:24-cv-00919-HBK (HC)[2]

ORDER GRANTING RESPONDENT'S MOTION TO DISMISS

(Doc. No. 20)

Petitioner Sokhean Keo, an immigration detainee in U.S. Immigration Customs and Enforcement (ICE) custody at the Mesa Verde ICE Processing Center in Bakersfield, California, initiated this action by filing a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241.

---

[1] Respondent moves to dismiss all unlawfully named officials under § 2241. (Doc. No. 20 at 1 n.1). The proper respondent in habeas cases is the "warden of the facility where the prisoner is held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 430 (2004). As recently held by the Ninth Circuit, in § 2241 cases filed by immigrant detainees, the proper respondent is the warden of the private detention facility. *Doe v. Garland*, 109 F.4th 1188, 1197 (9th Cir. 2024). Accordingly, the Court grants Respondent's motion and dismisses all unlawfully named officials. The proper respondent is the Facility Administrator of Petitioner's detention facility, the Mesa Verde ICE Processing Center.

[2] Both parties have consented to the jurisdiction of a magistrate judge in accordance with 28 U.S.C. §636(c)(1). (Doc. No. 9).

(Doc. No. 1, "Petition"). The Petition raises the following claim for relief: Petitioner's detention under 8 U.S.C. § 1226(c) without a bond hearing has been "unreasonably prolonged" in violation of his Fifth Amendment procedural due process rights. (*Id*. at 8-14). As relief, Petitioner asks the Court to issue a declaration that his "ongoing prolonged detention" violates his due process rights, issue a writ of habeas corpus, and hold a bond hearing before this Court; or in the alternative, to be provided a bond hearing before an immigration judge ("IJ") where the Government must justify his continued detention by clear and convincing evidence. (*Id*. at 2, 18).

In response, Respondent filed a Motion to Dismiss ("Motion") arguing that Petitioner's detention is mandatory pursuant to 8 U.S.C. § 1226(c) as an aggravated crime of violence felony offender, and his detention without a bond hearing "continues to serve legitimate congressionally mandated goals with a definite end in sight." (Doc. No. 20 (relying in large part on *Demore v. Kim*, 538 U.S. 510 (2003)). Petitioner filed an opposition to the Motion to Dismiss arguing that *Demore* does not preclude his as-applied challenge to his "prolonged detention," and restating his argument in the Petition that after applying the four-prong test in *Mathews v. Eldridge*[3] test, or an alternate multi-factor reasonableness test, his continued detention without a bond hearing violates his procedural due process rights under the Fifth Amendment. Respondent was directed to file a reply with particular attention paid to the status of Petitioner's then-pending request for reconsideration. (Doc. Nos. 26). On February 18, 2025, Respondent filed a reply updating the Court regarding the status of Petitioner's removal proceedings, and briefly restating its reasoning as previously set forth in the Motion as to why the Petition should be dismissed. (Doc. No. 27). Both parties subsequently filed Notices of Supplemental Authority.[4] (Doc. Nos. 28-29). For the reasons set forth more fully below, Court grants Respondent's Motion to Dismiss.

////

---

[3] *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

[4] Respondent informs the Court that following the Ninth Circuit decision in *United States v. Gomez*, 115 F.4th 987 (9th Cir. 2024), Petitioner's conviction under California Penal Code ("CPC") § 245(a)(2) is not a crime of violence, and therefore no longer a qualifying felony "crime of violence" that would subject Petitioner to mandatory detention under INA § 101(a)(43(F). (Doc. No. 28). However, as detailed below, Petitioner's convictions CPC § 212.5 and § 211 are aggravated theft felonies under INA § 101(a)(43)(U) and (G), and "Petitioner thus remains subject to pre-removal mandatory detention" under 8 U.S.C. § 1226 (c)." (*Id*. at 2).

## I. BACKGROUND

Petitioner was born in Cambodia in 1977. (Doc. No. 20-1 at 6). In 1984, Petitioner was admitted to the United States as a refugee. (*Id*. at 2). He was granted Lawful Permanent Resident status in the United States in 1986. (*Id*.). In 1999, Petitioner was convicted of conspiracy to commit home invasion robbery, attempted home invasion robbery, shooting a firearm at an occupied dwelling, and firearm and gang activity enhancements. (Doc. No. 20 at 2; Doc. No. 20-1 at 2-3). He was sentenced to a total of 31 years and eight months. (Doc. No. 20-1 at 3).

On January 6, 2023, Enforcement and Removal Operations ("ERO") arrested Petitioner upon his release from prison. (*Id*.). Based on his criminal history, ICE charged him with removability under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA") for having committed an aggravated felony as defined in INA § 101(a)(43)(F). (*Id*.). Petitioner was taken into ICE custody under the mandatory detention provisions in § 236(c) of the INA. (*Id*.). On January 25, 2023, Petitioner was transferred to the Mesa Verde ICE Processing Facility in Bakersfield, California. (*Id*.).

Petitioner requested an immigration judge ("IJ") to review his custody status on three occasions, but he withdrew each of these requests on January 19, 2023, March 23, 2023, and September 13, 2023, respectively. (*Id*.). On December 13, 2023, Petitioner submitted a release request, which was denied after finding Petitioner is subject to mandatory detention under § 236(c) of the INA. (*Id*.). On June 12, 2024, after receiving numerous continuances to seek an attorney and prepare applications for relief from removal, Petitioner appeared before an IJ for hearing on his application for relief from removal. (*Id*.). The IJ denied Petitioner's application for relief from removal and application for asylum, and ordered him removed from the United States to Cambodia. (*Id*.; Doc. No. 20-1 at 62-79); *see also* https://acis.eoir.justice.gov/en/caseInformation (case status determined with Petitioner's File Number)(last visited April 2, 2025).[5] On July 10, 2024, Petitioner appealed the IJ's denial of his application for relief to the Board of Immigration Appeals ("BIA"), and on October 11, 2024 the

---

[5] The Court may take judicial notice of information on official government websites. *McClure v. Ives*, 2010 WL 716193, at *3 (E.D. Cal. Feb. 26, 2010).

BIA affirmed the denial of asylum and affirmed the order of removal. (*Id*. at 4). On October 21, 2024, Petitioner filed a motion for reconsideration with the BIA, and on January 8, 2025, the BIA denied the motion. (Doc. No. 27-1 at 2; Doc. No. 27-1 at 17-20, Exh. 3).

While his motion for reconsideration was pending in front of the BIA, Petitioner filed a petition for review ("PFR") of the October 11, 2024 order with the Ninth Circuit on October 28, 2024. (Doc. No. 27-1 at 2). Petitioner concurrently filed a motion to stay of proceeding, which was automatically granted pending further order of the court. (*Id*.). On February 3, 2025, Petitioner filed a second PFR with the Ninth Circuit challenging the BIA denial of his motion to reconsider. The Appeals were consolidated, and as of February 18, 2025, are still pending. (*Id*.).

Petitioner was afforded another custody (parole) status hearing after he filed his first PFR before the Ninth Circuit, and the IJ determined that Petitioner remains subject to mandatory detention, pursuant to § 236(c) of the INA, "while his PFRs are pending with a stay of removal impeding ICE from removing him." (*Id*.).

## II. APPLICABLE LAW AND ANALYSIS

Under Rule 4, if a petition is not dismissed at screening, the judge "must order the respondent to file an answer, motion, or other response" to the petition. R. Governing 2254 Cases 4. The Advisory Committee Notes to Rule 4 state that "the judge may want to authorize the respondent to make a motion to dismiss based upon information furnished by respondent." A motion to dismiss a petition for writ of habeas corpus is construed as a request for the court to dismiss under Rule 4 of the Rules Governing Section 2254 Cases. *O'Bremski v. Maass*, 915 F.2d 418, 420 (9th Cir. 1990). Under Rule 4, a district court must dismiss a habeas petition if it "plainly appears" that the petitioner is not entitled to relief. *See Valdez v. Montgomery*, 918 F.3d 687, 693 (9th Cir. 2019); *Boyd v. Thompson*, 147 F.3d 1124, 1127 (9th Cir. 1998).

### A. Jurisdiction

A district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[D]istrict courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of [a] removal order."

*Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)). Pertinent here, the Supreme Court specifically directed that federal courts have jurisdiction to review a constitutional challenge to a non-citizen's detention under § 1226(c). *See Demore*, 538 U.S. at 517.

**B. Mandatory Detention under 8 U.S.C. § 1226(c)**

Section 236 of the Immigration and Nationality Act, 8 U.S.C. § 1226, governs the apprehension and detention of noncitizens whose removal proceedings are pending. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Here, Petitioner is detained pursuant to 8 U.S.C. § 1226(c), which, in relevant part, provides:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General *shall* take into custody any alien who—
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[1] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.
>
> (4) Release
>
> The Attorney General *may release an alien described in paragraph (1) only if* the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member

> or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

8 U.S.C. § 1226(c) (emphasis added); *Sanchez-Rivera v. Matuszewski*, 2023 WL 139801, *2 (S.D. Cal. Jan. 9, 2023) (noting aliens held under 8 U.S.C. § 1226(a) may seek a bond hearing, but "[a]liens detained under § 1226(c) do not get a bond hearing. Instead, the Attorney General 'may' only release the alien if doing so is necessary for the limited witness-protection purposes and the alien shows that he 'will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceedings."). In *Jennings v. Rodriguez*, the Supreme Court found that "together with § 1226(a), § 1226(c) makes clear that detention of aliens within its scope must continue 'pending a decision on whether the alien is to be removed from the United States.'" 583 U.S. 281, 303-04 (2018) ("By expressly stating that the covered aliens may be released 'only if' certain conditions are met, 8 U.S.C. § 1226(c)(2), the statute expressly and unequivocally imposes an affirmation prohibition on releasing detained aliens under any other conditions."). Accordingly, the Court held that "§ 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Id.*

Here, Petitioner has been detained for approximately 22 months (*See* Doc. No. 20 at 3) due to his prior conviction for aggravated felonies, including conspiracy to commit home invasion robbery, attempted home invasion robbery, and shooting a firearm at an occupied dwelling, inter alia. (Doc. No. 20-1 at 2-3). It is undisputed that Petitioner's detention is mandatory under 8 U.S.C. § 1226(c) and he does not meet any of the conditions for release pursuant to § 1226(c)(2). *See* 8 U.S.C. § 1226(c); *Jennings*. 583 U.S. at 303-04. Petitioner does not dispute the grounds for his mandatory detention; rather, he contends that his prolonged detention without a bond hearing violates his Fifth Amendment due process rights. (Doc. No. 1 at 10-14).

**C. Detention under 1226(c) without a Bond Hearing**

The Fifth Amendment's Due Process Clause provides that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law." Further, it is "well-established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 305 (1993*); Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001) ("this Court has held that the Due Process Clause protects an alien subject to a final order of deportation"). However, the Supreme Court has repeatedly directed that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 513 ("In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules as to aliens that would be unacceptable if applied to citizens."); *see also Zadvydas*, 533 U.S. 718 (Kennedy, J., dissenting) ("The liberty rights of the aliens before us here are subject to limitations and conditions not applicable to citizens."); *Carlson v. Landon*, 342 U.S. 524, 538 ("Detention is necessarily a part of this deportation procedure. Otherwise aliens arrested for deportation would have opportunities to hurt the United States during the pendency of deportation proceedings.").

Relevant here, "[i]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1114 (9th Cir. 2010); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1201, 1203 (9th Cir. 2022) (observing that "it remains undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute," and noting that both the Ninth Circuit "and the Supreme Court have repeatedly declined to decide constitutional challenges to bond hearing procedures in the immigration detention context, whether the claims were brought by an alien under § 1226(a) or another provision."). The pertinent line of authority starts with *Zadvydas v. Davis*, 533 U.S. 678 (2001), wherein the Supreme Court addressed a challenge to prolonged detention under 8 U.S.C. § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated

because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." *Prieto-Romero*, 534 F.3d at 1062 (citing *Zadvydas*, 533 U.S. at 684-86). The Court held that detention under § 1231(a)(6) is limited to a presumptively reasonable period of six months, after which a noncitizen was entitled to release if "it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*. at 701. Notably, the Court specifically distinguished § 1231 from § 1226 because "post-removal-period detention, unlike detention pending a determination of removability, has no obvious termination point." *Id*. at 697; *see also Jennings*, 583 U.S. 304.

In *Demore v. Kim*, 538 U.S. 510 (2003), the Supreme Court rejected a facial due process challenge to mandatory detention under 8 U.S.C. § 1226(c), and distinguished *Zadvydas* because mandatory detention under 8 U.S.C. § 1226(c) has a "definite termination point" when a decision is made regarding the alien's removability. *Id*. at 529. The Court recognized that Congress drafted § 1226(c) to respond to the increasing rates of crime and failure to appear for removal hearings among removable noncitizens convicted of certain crimes; thus, "the Government may constitutionally detain deportable [non-citizens] during the limited period necessary for their removal proceedings." *Id*. at 518-21, 526. Justice Kennedy concurred with the decision, thereby creating the majority, but noted "since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." (*Id*. at 532) (Kennedy, J., concurring).

In 2015, the Ninth Circuit applied the canon of constitutional avoidance to hold that for noncitizens detained under 8 U.S.C. §§§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention." *Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015). However, in *Jennings v. Rodriguez*, the Supreme Court found the Ninth Circuit misapplied the canon of constitutional avoidance and the "implicit 6-month time limit on the length of mandatory detention" under § 1226(c) fell "far short of a 'plausible statutory construction.'" 583 U.S. 281, 296, 303-04. The Court interpreted § 1226(c) to provide a "definite termination point" to the

length of detention – the "conclusion of removal proceedings" – and remanded to the Ninth Circuit to "consider the constitutional arguments on their merits." *Id*. at 304. Thus, while *Jennings* concluded that § 1226(c) authorized detention without a bond hearing on its face, it did not provide specific guidance as to whether an alien could assert an as-applied challenge to prolonged detention without a bond hearing under the Fifth Amendment due process clause.

Despite the lack of specific guidance from the Supreme Court or the Ninth Circuit on whether due process requires a bond hearing under § 1226(c), multiple United States Circuit Courts and "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)." *Martinez v. Clark*, 36 F.4th 1219, 1223 (9th Cir. 2022) ("according to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will – at some point – violate the right to due process."), *vacated on other grounds*, 144 S. Ct. 1339 (2024). A survey of decisions across the Circuits, and among the district courts within the Ninth Circuit, reveals a myriad of overlapping balancing tests applied to determine whether a petitioner's due process rights under the Fifth Amendment were violated when they were not afforded a bond hearing while detained under § 1226(c). *See German Santos v. Warden Pike*, 965 F.3d 203 (3d Cir. 2020) (reversing and remanding to district court to order bond hearing after finding mandatory detention for 2 ½ years was unreasonable according to reasonableness test fashioned from previous cases using four non-exhaustive factors: (1) duration of detention, (2) whether detention is likely to continue, (3) reasons for delay, and (4) whether the conditions of confinement are meaningfully different from criminal punishment.); *Alphonse v. Moniz*, 635 F.Supp.3d 28 (D. Mass. Oct. 17, 2022) (citing *Reid v. Donelan*, 390 F.Supp.3d 201, 219 (D. Mass. July 9, 2019)) (granting petition after applying five factor test: (1) total length of detention; (2) foreseeability of proceedings concluding gin the near future (likely duration of future detention); (3) period of detention compared to criminal sentence; (4) promptness/delay of immigration authorities or detainee; (5) likelihood that proceedings will culminate in final removal order)); *Black v. Decker*, 103 F.4th 133, 138 (2nd Cir. 2024) (applying *Mathews v. Eldridge* and finding 7-month and 21-month detentions without a bond hearing violated Fifth Amendment due process rights); *Oscar v. Ripe*, --F.Supp.3d--, 2024

WL 5046043 (S.D. Fl. Sept. 27, 2024) (finding detention for one year without bond hearing violated petitioner's due process rights after applying "Sopo" (*Sopo v. U.S. Att'y Gen*., 825 F.3d 1199 1217-18 (11th Cir. 2016) factors: (1) the amount of time the alien has been in detention without a bond hearing; (2) the cause of the protracted removal proceedings (*i.e.*, whether petitioner or the government has improperly delayed the proceedings); (3) whether it will be possible to remove the alien upon the issuance of a final order of removal; (4) whether the period of civil immigration detention exceeds the time the alien spent in prison for the crime that rendered the alien removable; (5) whether the facility at which the alien is civilly detained is meaningfully different from a penal institution; and (6) the likelihood the removal proceedings will conclude in the near future)); *Doe v. Becerra*, 732 F.Supp.3d 1071 (9th Cir. 2024) (finding petitioner's 30-month detention under 1226(c) violates due process and ordering the government to "propose an appropriate remedy" after applying five factors: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held); *Sarr v. Scott*, --F.Supp.3d--, 2025 WL 388652 (W.D. Wash. Feb. 4, 2025) (applying "*Martinez* test" (2019 WL 5968089), at *6-7 (W.D. Wash. May 23, 2019) as follows: (1) the total length of detention to date; (2) the likely duration of future detention; (3) whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable; (4) the nature of the crimes the petitioner committed; (5) the conditions of detention; (6) delays in the removal proceedings caused by the petitioner; (7) delays in the removal proceedings caused by the government; and (8) the likelihood that the removal proceedings will result in a final order of removal.); *Eliazar v. Wofford*, 2025 WL 711190 (E.D. Cal. Mar. 5, 2025 (applying *Mathews v. Eldridge* and granting petition in part); *Diep v. Wofford*, 2025 WL 604744 (E.D. Cal. Feb. 25,2025) (applying *Mathews v. Eldridge* and granting petition); *Lopez v. Garland*, 631 F. Supp.

3d 870 (E.D. Cal. Sept. 29, 2022) (granting petition in part after declining to apply *Mathews v. Eldridge*, and instead considering three factors: (1) total length of detention to date, (2) likely duration of future detention; (3) and the delays in the removal proceedings caused by the petitioner and the government); *But see Oladipupo v. Schmidt*, 2023 WL 3568498 (E.D. Wis. May 18, 2023) (denying petition for writ of habeas corpus after applying five factor test: (1) total length of detention; (2) foreseeability of proceedings concluding gin the near future (likely duration of future detention); (3) period of detention compared to criminal sentence; (4) promptness/delay of immigration authorities or detainee; (5) likelihood that proceedings will culminate in final removal order); *S.C. v. Warden, Stewart Detention Center*, 2024 WL 796541 (M.D. Ga. Jan. 5, 2024) (applying *Sopo* factors as "persuasive authority" and recommending Respondent's motion to dismiss be granted with particular emphasis on the reasonableness of the government's efforts to facilitate deportation during petitioner's 23-month detention); *Romero-Romero v. Wofford*, 2025 WL 391861 (E.D. Cal. Feb. 4, 2025) (applying *Mathews v. Eldridge* and granting respondent's motion to dismiss petition).

Here, Petitioner first argues that his detention under § 1226(c) exceeding six months without a bond hearing is unconstitutional on its face. (Doc. No. 1 at 9-10). *Supra*, the Supreme Court soundly rejected this facial challenge in *Jennings*. 583 U.S. at 304 (interpretation of § 1226(c) as including an "implicit 6-month time limit on the length of mandatory detention" falls "far short of a 'plausible statutory construction.'"); *see also Riego v. Scott*, 2025 WL 660535, at *2 (E.D. Cal. Feb. 28, 2025). Next, Petitioner argues he is entitled to an individualized bond hearing because his 22-month detention has become unreasonably prolonged, and his continued detention without individualized review is unreasonable under a *Mathews v. Eldridge* balancing test or a "multi-factor" reasonableness inquiry such as the test applied by the Third Circuit. (Doc. No. 1 at 10-14 (citing e.g., *German Santos*, 965 F.3d at 210-22)). Respondent argues that Petitioner is properly detained as mandated under § 1226(c) as an aggravated crime of violence felony offender; moreover, his detention pending removal proceedings is constitutionally permissible because the United States has significant interest in detention of non-citizen criminals, and the "period of detention is finite, pending further removal proceedings that

Petitioner himself demanded." (Doc. No. 20 at 3-4 (citing *Demore*, 538 U.S. at 513; *Jennings*, 583 U.S. at 304). In his opposition, Petitioner argues that *Demore* does not foreclose his ability to bring an as-applied challenge to his "prolonged" detention, and restates the argument made in his Petition that the *Mathews* balancing test is applicable here and due process entitles him to a bond hearing. (Doc. No. 25).

After thorough review of the clear and unequivocal statutory text of § 1126(c), relevant Supreme Court precedents, and the cases identified above, this Court declines to apply any "multi-part, judge-made 'reasonableness' balancing test" as unnecessary under the circumstances presented here. *See Banyee v. Garland*, 115 4th 928, 931, 933 (8th Cir. 2024) ("*Zavydas* and *Demore* have already done whatever balancing is necessary."). In *Demore* and *Jennings*, the Supreme Court reaffirmed its "longstanding view that the government may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Demore*, 538 U.S. at 526; *Jennings*, 583 U.S. 304 ("detention under § 1226(c) has a 'definite termination point': the conclusion of proceedings. As we made clear here, that 'definite termination' – and not some arbitrary time limit devised by the courts – marks the end of the Government's detention authority under § 1226(c)."). The common thread throughout the litany of balancing tests, cited above, is a court's evaluation of at what point in time detention without a bond hearing extends past that "limited period," thereby violating a detainee's due process rights under the Fifth Amendment. *See, e.g., id*. at 529 (noting in 2003 that "not only does detention have a definite termination point," but in the "majority of cases" § 1226(c) "lasts for less than … 90 days," 85% of the cases are completed in an average time of 47 days, and in the remaining 15% of cases involving appeals, the process "takes an average of four months."); *cf. Martinez*, 124 F.4th at 789 (Bumatay, J., dissenting) (noting in 2004 that the median processing time for an immigration case to reach a merits decision is 39 months); *see also Doe v. Becerra*, 732 F. Supp. 3d 1071, 1079 (quoting *United States v. Torres*, 995 F.3d 695, 708 (9th Cir. 2021) ("at some point detention can become excessively prolonged, and therefore punitive, resulting in a due process violation. This can be true even if the detention will necessarily end."); *Gonzalez v. Bonnar*, 2019 WL 330906, at *5 (N.D. Cal. Jan. 25, 2019) (collecting cases) ("This Court concludes, as have nearly all the

other courts to consider this issue, that the starting point of the analysis is the length of detention – both how long the petitioner has been detained and how long the detention is likely to last.").

The undersigned does not read *Demore* as requiring a consideration of the temporal bounds of a "limited period" completely separate from determining whether that "limited period" is "*necessary for their removal proceedings*." *Demore*, 538 U.S. at 526 (emphasis added). Rather, as noted by the Eight Circuit, "nothing suggests that length determines legality. To the contrary, what matters is that detention pending deportation 'ha[s] a definite termination point" – deporting or releasing the alien – making it "materially different" from the "potentially permanent" confinement authorized by other statutes. The *why*, in other words, is more important than *how long*." *Banyee*, 115 F.4th at 932 (*citing, e.g., Zadvydas*, 533 U.S. at 697) (emphasis in original)); *Jennings*, 583 U.S. 304. The Court finds the concurring opinion of Judge Bumatay in *Martinez v. Clark*, particularly instructive and convincing as to this issue. In *Martinez*, Judge Bumatay agreed that the court has jurisdiction to review whether an alien is a "danger to the community" under Supreme Court precedent but specifically noted the court

> should never have gotten to this point. That's because we had no authority to order a new bond hearing for a "criminal alien[ ]" subject to mandatory detention under 8 U.S.C. § 1226(c). That provision provides that an alien who commits certain offenses "shall" be taken into custody. 8 U.S.C. § 1226(c)(1). Instead, egged on by some of our wayward precedent, the district court believed that due process requires that [petitioner] receive a bond hearing (and be potentially released) simply because his removal proceeding had become "prolonged." *See Martinez v. Clark*, 2019 WL 5962685, at *1 (W.D. Wash. 2019). But this defies Congress's clear command and assumes an outsized role for federal courts over immigration-detention decisions. Simply put, the Due Process Clause doesn't grant federal courts the freedom to refashion statutory detention requirements in the immigration context.
>
> ***
>
> Due process doesn't require bond hearings for criminal aliens mandatorily detained under § 1226(c)—even for prolonged periods. "As a matter of text, structure, and history, Congress may authorize the government to detain removable aliens throughout their removal proceedings." *Rodriguez Diaz*, 53 F.4th at 1214 (Bumatay, J., concurring). And "[n]othing in the Due Process Clause requires individualized bond determinations beyond what Congress has established." *Id.* at 1214. That's because, in the immigration context, "Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore*, 538 U.S. at 521, 123 S.Ct. 1708

> (simplified). So while mandatory detention may not be allowed for criminal purposes and most civil contexts, immigration stands apart from those areas.
>
> Because Congress possesses "considerable authority over immigration matters," mandatory detention under § 1226(c) has been upheld "as a constitutionally valid aspect of the deportation process." *Id.* at 523, 123 S.Ct. 1708 (simplified). Thus, when detention is for an "immigration purpose," "Congress may grant the Executive the authority to detain aliens during removal proceedings—with or without bond hearings." *Rodriguez Diaz*, 53 F.4th at 1218 (Bumatay, J., concurring). "And so long as the government follows reasonable, individualized determinations to ensure that the alien is properly in removal proceedings, due process does not require more bond hearings *even after a prolonged period.*" *Id.* (emphasis added).
>
> **Absent any allegation that the extended detention here is unrelated to an immigration purpose, the mere fact that detention is "prolonged" doesn't alter the statutory framework**. Indeed, in our circuit, the median processing time for an immigration case to reach a merits determination is 39 months. Does that mean that any immigration proceeding appealed in the Ninth Circuit would automatically invalidate mandatory detention under § 1226(c)? Why should our delays in processing cases impact Congress's design? … Thus, no extra bond hearing was due here.

*Martinez v. Clark*, 124 F.4th 775, 787-89 (9th Cir. 2024) (Bumatay, J, dissenting) (emphasis added).

To be clear, this common-sense reasoning does not foreclose the possibility of a due process violation and bond hearing for a § 1226(c) detainee where circumstances evince that detention is for some other non-immigration purpose. In *Demore*, the Court acknowledged that "detention … d[oes] not serve its purported immigration purpose" when removal is "no longer practically attainable." 538 U.S. at 527 (citing *Zadvydas*, 533 U.S. at 690) (where "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed"); *see also id*. at 532-33 (Kennedy, J., concurring) ("Were there to be an unreasonable delay by INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against the flight or dangerousness, but to incarcerate for other reasons."); *Wong Wing v. United States*, 163 U.S. 228, 237-38 (1896) (finding civil detention of a removeable noncitizen violates the Constitution if it is punitive). However, consistent with

existing Supreme Court precedent and without further guidance specifically as to this issue from the Supreme Court or the Ninth Circuit, this Court finds the threshold question in considering Petitioner's claims of unreasonably prolonged detention under § 1226(c) without a bond hearing is whether Petitioner's continued detention serves the purported immigration purpose and has a definite termination point, as opposed to any "balancing test" to determine whether procedural due process is due based largely on the length of Petitioner's detention without a bond hearing. *See Perez-Cortez v. Mayorkas*, 2022 WL 1431833, at *3 (D. Nev. May 4, 2022) (denying petition because detention under § 1226(c) "is mandatory, and [petitioner] is not being detained indefinitely," rather, petitioner remains detained because he is still litigating his order of removal); *Banyee*, 115 F.4th at 933-34 ("What is important is that, notwithstanding a delay, deportation remains a possibility.").

Here, because removal proceedings are still actively "pending" and Petitioner is not eligible for relief under 8 U.S.C. § 1226(c)(2), detention is mandatory under § 1226(c). 8 U.S.C. § 1226(c); *Jennings*. 583 U.S. at 303-04; *Demore*, 538 U.S. at 527; *see also Rimtobaye v. Castro*, 2024 WL 5375786,at *3 (W.D. Tex. Oct. 29, 2024) (finding petitioner detained under § 1226(c) was not constitutionally entitled to a bond hearing during his removal proceedings, despite the length of his detention, "because he is not in witness protection and not entitled to relief under § 1226(c)(2) and because he is still in removal proceedings"). As argued by Respondent, "[d]etention of a violent criminal non-citizen alien, as in this case, during removal proceedings remains constitutional so long as it continues to 'serve its purported immigration purpose.' Those purposes – ensuring a noncitizen alien's appearance for removal proceedings and preventing the non-citizen from committing further offenses – are present throughout removal proceedings and do not abate over time while those proceedings are still pending." (Doc. No. 20 at 5 (citing *Demore*, 538 U.S. at 527)); *see also Rodriguez Diaz*, 53 F.4th at 1208 (noting the government's interests only increase with the passage of time as they devote resources to "securing an alien's ultimate removal").

As detailed above, Petitioner is awaiting a decision on his consolidated appeals regarding an order that *requires* his removal. (Doc. No. 20-1 at 62-79). Petitioner does not argue, nor does

the Court discern, that the ongoing proceedings are intended to "incarcerate [him] for other reasons," nor does Petitioner argue that his detention does not serve "its purported immigration purpose" or that he is being detained indefinitely. *See Demore*, 538 U.S. at 533 (Kennedy, J., concurring). Moreover, Petitioner does not point to any "unreasonableness" in the length of removal proceedings that is directly attributable to the government; rather, the delay appears to be a direct result of Petitioner taking full advantage of his right to contest his removal. He has been afforded substantial due process in the form of multiple custody reviews, applications for relief from removal and for asylum, and appeals including the consolidated appeal currently pending before the Ninth Circuit. *See Navarrette-Leiva v. Current or Acting U.S. Atty Gen*., 2024 WL 5111780, at *3 (E.D. Cal. Dec. 13, 2024) (noting petitioner was "twice reviewed for consideration of parole release" and therefore his "contention that his procedural due process rights have been violated by failure to provide opportunity to challenge continued detention is not well-taken."); *Demore*, 538 U.S. at 530-31 ("Respondent was detained for somewhat longer than the average … but respondent himself had requested a continuance of his removal hearing."); *S.C. v Warden*, 2024 WL 796541, at *6 ("while Petitioner has been detained for approximately 23 months at this point, the bulk of this period was while the [court] considered his petitions for review and other motions and not due to unexplained inactivity by the immigration courts."). "While [Petitioner] certainly has the right to pursue all available avenues to combat his removal, post-*Jennings*, he does not have the right to parlay the resulting delay into a bond hearing." *Oladipupo*, 2023 WL 3568498, at *5 (noting there was "no indication proceedings were unreasonably delayed for any reason attributable to the government," rather, the length of petitioner's detention "is primarily attributable to the avenues for relief that he has pursued and his requests for extensions of time.").

In conclusion, it is undisputed that Petitioner's detention is mandated under § 1226(c) and he does not meet any of the statutory conditions for release. *See* 8 U.S.C. § 1226(c); *Jennings*. 583 U.S. at 303-04. As discussed in detail above, Petitioner's detention is not indefinite; there is a "definite termination point" at the conclusion of his ongoing legal challenges. *Jennings*, 583 U.S. 304. There is no indication that the ongoing removal proceedings do not serve their intended

purpose or are intended to "incarcerate him for other reasons." *Demore*, 538 U.S. at 527, 538. Therefore, the Court finds no due process violation in Petitioner's continued detention under § 1226(c) without a bond hearing at this time. *See Romero-Romero*, 2025 WL 391861, at *9 ("Should circumstances change and continued detention appear to be indefinite in nature, due process may require a different outcome.").

Accordingly, it is hereby **ORDERED:**

1. The Court grants Respondent's motion to dismiss all improperly named officials as Respondents and finds the sole proper respondent is the Facility Administrator of Petitioner's detention facility, the Mesa Verde ICE Processing Center.
2. The Court GRANTS Respondent's Motion to Dismiss (Doc. No. 20) and DISMISSES the Petition for Writ of Habeas Corpus (Doc. No. 1).
3. The Clerk of Court is directed to terminate any pending motions and CLOSE this case.

Dated: April 4, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE